UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

WESLEY ALTERAUGE and )
DAWNE ALTERAUGE, )
  )
  ) Case No. 4:12-cv-02213-CAS
   Plaintiffs, )
v. )
  )
FEDEX GROUND PACKAGE )
SYSTEM, INC., )
  )
   Defendant. )

**SUR-RESPONSE IN OPPOSITION TO DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DETERMINE THE VALUE OF MEDICAL TREATMENT**

COMES NOW Plaintiffs Wesley and Dawne Alterauge, by and through their undersigned attorneys, and in support of their Sur-Response in Opposition to Defendant's Reply in Support of its Motion to Determine the Value of Medical Treatment, states as follows:

### I.   Plaintiff's affidavits do rebut the presumption regarding all providers.

Defendant FedEx Ground Package System, Inc. ("FedEx Ground") argues "the affidavits attached to Plaintiff's Memorandum in Opposition [to Defendant's Motion to Determine the Value of Medical Treatment (Doc. No. 32)] as Exhibit 2 regarding Hand Therapy, Exhibit 3 through 7 regarding St. John's Clinic, Exhibit 8 regarding Orthopedic Associates, Exhibit 11 regarding Mercy Clinic – Dr. Hern, Exhibit 16 regarding Mercy Clinic Internal Medicine, and Exhibit 17 regarding Mercy Clinic Neurology do not contain statements that the amounts billed represent the value of the treatment rendered." (Doc. No. 33). However, these affidavits do contain language that the records were kept in the regular course of the medical office's business, that the charged fees were

1

reasonable at the time and place that the services were necessary (see affidavits attached as Exhibits 1-17 to Plaintiff's Memorandum in Opposition to Defendant's Motion to Determine the Value of Medical Treatment, Doc. No. 32). As discussed below, this language proves the value of the services.

An affidavit regarding the value of charged medical services must state that "the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary [in order for it to constitute] sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." Mo. Rev. Stat. §490.525. Each of the affidavits plaintiffs submitted contain this "reasonable" and "necessary" language.

After FedEx Ground submitted its billing records, the presumption was created that the amount paid for the medical services equates to the value of the medical services provided to plaintiff. *Deck v. Teasley*, 322 S.W.3d 536, 539 (Mo. Ct. App. 2010). In order for plaintiffs to rebut this presumption, they were required to present substantial evidence that "if true, has probative force upon the issues, i.e., evidencing favoring facts which are such that reasonable men may differ as to whether it establishes them..." *Id.* at 540 (internal citations omitted). In order to rebut the presumption that the value of the medical services provided is the amount charged, plaintiff must submit "additional evidence, including but not limited to: (a) The medical bills incurred by a party." Mo. Rev. Stat. §490.715.5(2).

The crux of defendant's response is that the term "value" is not contained in some of the affidavits submitted by plaintiff's to rebut defendant's §490.525 motion. This argument is however, misplaced. Pursuant to the statute, the court's role is to determine

whether plaintiff has submitted evidence of the bills he has "incurred". *Berra v. Danter*, 299 S.W. 3d 690, 696-98 (Mo. App. E.D. 2009). Plaintiffs' medical affidavits do just that.

In *Berra*, the plaintiff had submitted his doctors' "billing statements" to rebut the statutory presumption. Focusing on §490.715 5(2)(a) which lists "the medical bills incurred by a party." The court specifically held that the "additional evidence" a court may hear includes…the "medical bills incurred by a party." *Id.* at pp 696-97. As such, the trial court was correct to submit to the jury the amount of plaintiff's bills based upon the billing statements provided by his doctor.

Here, plaintiff has submitted much more than just the billing statements. Plaintiffs have submitted record affidavits that detail the amount billed, but also that the services were customary and necessary. Since defendant's only prove value of the payments made by affidavit, plaintiff's affidavits of the value of the bills incurred is sufficient to rebut the presumption.

## II. It is not the role of this Court to determine whether charges related to non-treatment services or Wesley's Barrett's Esophagus should be barred.

In its second point, Defendant argues that certain bills should be excluded because they are purportedly not related to this incident. However, this decision is not one for this Court to make; it is a decision for the jury. Mo. Rev. Stat. §490.715.5(2) directs the Court to "determine…the value of the medical treatment rendered…" However, this does not mean the Court is tasked with making the final determination with regard to the actual value of the services. *Deck*, 322 S.W.3d at 541-542 (Mo. Ct. App. 2010). Rather, it is this Court's job to determine whether the presumption has been rebutted. *Id.* If it

has, then the issue of the exact value of the medical services is charged to the jury. *Id.* Furthermore, the last sentence of Mo. Rev. Stat. §490.715.5(2) states that evidence of collateral sources shall not be made known to the jury. *Id.* As pointed out in *Deck*, this provision "clearly contemplates that evidence regarding the value of medical treatment will be presented to the jury."

In *Cox v. KLS Martin, L.P.*, 2012 U.S. Dist. LEXIS 113549 (Mo. Ct. App. 2012), the defendant argued that plaintiff lacked the necessary expert testimony to "demonstrate the reasonableness and necessity of the procedures themselves." *Cox* at *5 (Mo. Ct. App. 2012). While the court agreed that the plaintiff "must prove the medical services were necessary in light of Defendant's conduct…this obligation arises at trial, not at this juncture. *Id.* The court also stated that its only role is to determine whether plaintiff may present the amount billed for the services, not to determine plaintiff's ability to recover said medical expenses. *Id.* at *5-6.

As this authority illustrates the Court's only role at this stage is to decide whether the presumption has been rebutted. The extent of which medical bills to consider should be decided by the jury.

Assuming, *arguendo*, that it is the role of this Court to determine which specific bills should be submitted to the jury. FedEx Ground argues that the following medical treatment should not be submitted to the jury. Again, this is not the proper inquiry at this time. Plaintiff contends that all of this medical treatment was related to this incident, and therefore, should be presented to the jury.

a. <u>Wesley's treatment in relation to his Barrett's Esophagus</u>

FedEx Ground argues that because plaintiffs did not specifically mention injury to

4

Wesley's gastrointestinal system in its petition, evidence of these injuries should be excluded. However, it is clear from plaintiff's expert witness Dr. Burke's deposition testimony that the condition is clearly connected to this incident. Dr. Burke testified that "there is a strong correlation between Barrett's Esophagus and significant levels of nonsteroidal anti-inflammatory use...I can just clearly state with a very strong degree of medical certainty that the diagnosis of Barrett's Esophagus is strongly correlated with significant anti-inflammatory use." Burke's deposition, p. 33: 12-14, p. 34: 14-18.

Wesley visited Dr. Wombold at PCRMC Medical Group for treatment of his gastrointestinal problems. On June 8, 2011, Dr. Wombold conducted an esophagogastroduodenoscopy with biopsy and colonoscopy with biopsy, concluding that Wesley was suffering from Barrett's Esophagus. Wesley discussed these issues with both Dr. Katie Hern and Dr. David Myers (defendant argues these bills should be excluded as well). Because all of Wesley's treatment for his Barrett's Esophagus is related to this incident, evidence of such should be presented to the jury.

FedEx Ground further argues that this injury was not mentioned in plaintiff's Rule 26(a) initial disclosures. However, plaintiff's supplemented their initial disclosures on September 23, 2013, identifying Drs. Hern, Myers and Wombold as persons with knowledge regarding Wesley's medical condition as a result of this incident. Finally, FedEx Ground argues that it was unable to gather medical records related to Wesley's Barrett's Esophagus. This is factually untrue. Plaintiffs sent FedEx Ground all of Wesley's medical records on August 2, 2013 and August 9, 2013 (see cover letters, Exhibits 2 and 3).

    b.    <u>Dr. David Myers</u>

Dr. Myers was Wesley's primary care physician in 2011. On May 23, 2011, Wesley visited Dr. Myers complaining of heartburn and decreased sexual drive. These symptoms are related to the Barrett's Esophagus and the medication plaintiff takes for the unrelenting pain in his shoulder are direct results of the injuries he sustained in the incident. Therefore, bills for these services should be submitted to the jury.

    c.    <u>Dr. Katie Hern</u>

Dr. Katie Hern is Wesley's current primary care physician. On November 30, 2012, Wesley visited Dr. Hern complaining of gastrointestinal problems. These symptoms are a direct result of the injuries he sustained in the incident. Therefore, bills for these services should be submitted to the jury.

    d.    <u>Walmart pharmacy</u>

Wesley filled a number of prescriptions at Walmart pharmacy for symptoms that were a direct result of the injuries he sustained in the incident. He was prescribed Hydrocodone/Acetaminophen and Oxycodone/Acetaminophen for pain, and Diazepam for muscle spasms. As these prescriptions are related to his injuries, bills for these prescriptions should be submitted to the jury.

    e.    <u>Vandivort pharmacy</u>

Wesley filled a number of prescriptions at Vandivort pharmacy for symptoms that were a direct result of the injuries he sustained in the incident. He was prescribed Hydrocodone/Acetaminophen, Naproxen and Nucynta ER for pain, Ranitidine for heartburn and indigestion, Peg 3350 Electrolite Solution as preparation for his colonoscopy, Nexium for heartburn and Diazepam for muscle spasms. As these

prescriptions are related to his injuries, bills for these prescriptions should be submitted to the jury.

### III. Conclusion

Based upon the foregoing, plaintiff should be permitted to present the following evidence related to the value of the medical services Wesley received in connection to this incident:

| | | |
|---|---|---|
| 1. | Phelps County Regional Medical Center | $81,982.90 |
| 2. | Hand Therapy of Central Missouri | $7,557.00 |
| 3. | Mercy Clinic Rolla – Orthopedics | $19,741.00 |
| 4. | Orthopedic Associates | $8,343.00 |
| 5. | Rolla Family Clinic | $362.20 |
| 6. | Dr. Katie Hern: Mercy Family Clinic | $113.00 |
| 7. | Dr. David Myers Family Clinic | $73.00 |
| 8. | PCRMC Medical Group | $2,236.00 |
| 9. | Wal-Mart Pharmacy | $392.86 |
| 10. | Vandivort Drug Pharmacy | $3,254.63 |
| 11. | Mercy Clinic: Internal Medicine | $1,791.00 |
| 12. | Mercy Clinic: Neurology | $553.00 |
| **TOTAL CHARGED:** | | **$126,399.59** |

WHEREFORE, plaintiffs Wesley and Dawne Alterauge pray this Court submits the question of the reasonable value of Wes Alterauge's medical expenses to the jury, using the amounts tendered by plaintiffs, and for such other relief as this Court deems reasonable and proper.

SHER CORWIN WINTERS LLC

By: /s/David S. Corwin
David S. Corwin, #2880
Amanda R. Sher, #5212079
190 Carondelet Plaza, Suite 1100
St. Louis, MO 63105
(314) 721-5200
(314) 721-5201 (fax)
dcorwin@scwstl.com
asher@scwstl.com

*Attorneys for plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was served via US mail on this 22nd day of November, 2013 on the following:

John S. McCollough
Melissa R. Null
HeplerBroom, LLC
211 North Broadway, Suite 2700
St. Louis, MO 63102
*Attorneys for defendant*

/s/David S. Corwin

8